UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Landon Young,  Civil No. 09-1653 (JRT/FLN)

    Plaintiff,

v.  **REPORT AND RECOMMENDATION**

McLane Minnesota, Inc.,

    Defendant.

---

Stephen C. Fiebiger for Plaintiff.
Alec J. Beck & Emily L. Ruhsam for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on August 17, 2010 on Defendant's Motion for Summary Judgment [#13]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends the motion be **DENIED**.

## I. BACKGROUND

In 2007, Landon Young ("Plaintiff") worked at McLane Minnesota, Inc. ("McLane") in the warehouse as a full case grocery selector. (ECF No. 17, Ruhsam Aff. ("Ruhsam Aff."), Ex. A, Landon Young Depo., Nov. 11, 2009 ("Young Depo.") at 11.) Plaintiff's job duties included selecting, loading and transporting products to the designated dock area using tuggers and pallet jacks. (*See* ECF No. 16, Pufahl Aff. ("Pufahl Aff."), Ex. A.) Plaintiff worked the day shift, which began at 6:00 A.M. and generally concluded at 2:30 P.M., or sometime thereafter. (Young Depo. at 43.)

After working his shift on Monday, September 24, 2007, Plaintiff was in a car accident. (*Id.* at 52.) He was taken to the hospital by ambulance for his injuries and was released sometime after 9:00 P.M. that night. (*Id.* at 61.) At 9:47 P.M. (before McLane's second shift ended), Plaintiff placed a call to McLane's main number. (*Id.* at 60-61; Pufahl Aff., Ex. B.) Plaintiff does not remember the name of the individual with whom he spoke at the time, but recalls telling the on-duty supervisor on the other end of the line that he had been in an accident, that he "had to be off work for a while," and that he would bring in a doctor's note. (Young Depo. at 63-64.) Plaintiff allegedly explained to the supervisor: "I had to be out until my next doctor's visit in eight days [scheduled for October 3rd], and I would present a doctor's note after that visit." (*Id.* at 65.) According to Plaintiff, the individual told him "that was fine." (*Id.* at 64.) At that time, he did not speak with his direct supervisor, Tyrone McGee, who had already left for the day. (*Id.* at 63.)

On Wednesday, September 26, 2007, Plaintiff called McLane's billing office to inquire about a past-due raise. (*Id.* at 79.) In his deposition, Plaintiff stated that he told the billing office that he would not return until his next doctor's appointment. (*Id.*) Plaintiff did not talk with McGee at that time. (*Id.* at 70, 84.) Plaintiff's cell phone records show that he also placed calls to McLane on September 26 and 28,[1] as well as October 2, 3, and 5. (Pufahl Aff., Ex. B.)

McLane maintains a policy for "no call no show" absences. An employee's "failure to call in to report an absence or report to work by the end of the [employee's] shift . . ." constitutes a violation of the "no call no show" policy. (Young Depo., Ex. 4.) McLane's policy for "no call no show" absences dictates that the first violation results in a final warning and the second violation results in separation from employment. (*Id.*)

---

[1] Phone records revealed that Plaintiff placed two phone calls to McLane's general switchboard on Friday, September 28, 2007 (one at 4:05 P.M. and one at 4:07 P.M.) (*See* Pufahl Aff., Ex. B.)

McLane's attendance policy also states that, for medical absences, "[a] doctor's note confirming treatment and the need for multiple days off is required for absences of four or more consecutive days." (*Id.*) Plaintiff admitted he was aware of this requirement, noting during his deposition that, after missing "two or three days," an employee "would be required to produce a note from a physician." (Young Depo. at 33.)

McLane alleges that it terminated Plaintiff's employment on October 1, 2007 for violating the "no call no show" policy on Thursday, September 27 and Friday, September 28. (*See* Pufahl Aff. ¶ 5, Ex. C.) McLane further argues that, because Plaintiff's two phone calls on September 28 were placed at 4:05 P.M. and 4:07 P.M., after the end of his scheduled shift (2:30 P.M.), these calls did not change the fact that his absence of September 28 constituted a second violation of the "no call no show" policy. (*See* Pufahl Aff., Ex. B.) Plaintiff maintains, however, that he was not terminated until October 5, 2007, the date McLane completed his termination paperwork. (*See id.*)[2]

On October 3, 2007, Plaintiff physically brought a medical Report of Workability form to McLane Human Resources. (Young Depo. at 68, 91.) As articulated within the report, a physician authorized Plaintiff to work with limitations from October 3, 2007 through October 17, 2007 with "desk duty with 5 minute breaks every 15 minutes as [he] develops severe back spasm [with] prolonged inactivity." (Young Depo., Ex. 9.) Later on October 3, 2007, Plaintiff spoke with McGee on the phone. (*See* Pufahl Aff., Ex. B; Young Depo. at 98.) At that time, McGee told Plaintiff he was being let go because he "missed too many days since the accident." (Young Depo. at 99.)

On June 29, 2009, Plaintiff initiated the instant lawsuit, alleging violations of the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). Plaintiff claims

---

[2] Plaintiff formerly asserted in his complaint that McLane did not terminate his employment until October 11, 2007. (Compl. ¶ 5.)

employment discrimination and asserts that McLane wrongfully terminated him "because of his disability, or perceived disability, and retaliated against [him] for requesting reasonable accommodations for his disability." (Compl. ¶ 12.) McLane has since moved for summary judgment.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

According to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to determine whether a certain fact is material, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of

4

the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

  **B.**  **Because Genuine Issues of Material Fact Exist for Trial, Summary Judgment Is Inappropriate.**

McLane argues that, because Plaintiff did not call in or report to work on Thursday, September 27 or Friday, September 28 and because Plaintiff's calls of September 28, 2007 were placed after the time his shift ended (2:30 P.M.), Plaintiff's Friday absence constituted a second violation of the "no call no show" policy, which automatically resulted in his termination under McLane's attendance policy. Still, a reasonable jury could conclude that Plaintiff was subjected to discrimination and retaliation in violation of the ADA and MHRA. For this reason, summary judgment should not be granted.

Plaintiff asserts that he informed McLane of his alleged disability and his need for reasonable accommodation and supplied to McLane evidence thereof. Plaintiff alleges that he called McLane seven times between September 24 and October 5, 2007. He called McLane the day of the accident after leaving the hospital, explained his condition, and placed multiple calls thereafter. There is evidence in the record that many (if not all) of these calls occurred, and McLane does not dispute that the calls took place.

Additionally, Plaintiff asserts that, on September 26, 2007, he called, or otherwise supplied

his first doctor's note to McLane. If and when McLane received this note is an issue for the trier of fact. At some point, Plaintiff spoke with his supervisor, McGee, who acknowledged talking to Plaintiff about his accident. On October 3, 2007, McGee allegedly fired Plaintiff for "missing too many days" of work. Plaintiff further alleges that he was never notified that he was in jeopardy of losing his job by violating any policy.

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could determine that, based on these calls and Plaintiff's interactions with McLane staff, McLane was aware of his impairments and that Plaintiff requested reasonable accommodation. *See Sims v. Health Midwest Phy. Serv. Corp.*, 196 F.3d 915, 921 (8th Cir. 1999) (if authorized agents with a reporting duty or persons reasonably believed to have such a duty acquire knowledge, then the corporation acquired such knowledge). The jury could ultimately conclude that Plaintiff was disabled and that McLane terminated his employment as a result of this disability.

Additionally, genuine issues of material fact exist as to the date of Plaintiff's termination from employment. His discharge note is dated October 5, 2007, yet Plaintiff alleges that this document was never given to him. Plaintiff contends that the decision to fire him was made after the company had in its possession, on October 3, 2007, a physician's report, which set forth Plaintiff's physical restrictions. A reasonable jury could find Plaintiff's recitation of the facts credible and could ultimately conclude that, based upon his condition, Plaintiff was subjected to retaliation and reprisal by McLane.

There appear to be genuine issues of material fact governing the circumstances of Plaintiff's absence and dismissal from employment. The evidence in the record shows that Plaintiff called in to work on the date of his accident on September 24, 2007. A reasonable jury could find that

McLane approved Plaintiff's extended absence at that time or during any one or more of its subsequent interactions with Plaintiff. While there is also evidence that Plaintiff went two days without calling or reporting to work, at best this is a defense to the complaint (as a purported legitimate reason for terminating his employment).

A reasonable jury could find that McLane was aware of Plaintiff's disability or perceived Plaintiff to be disabled. Genuine issues of material fact exist, not only about the date on which McLane terminated Plaintiff's employment, but also about whether Plaintiff was wrongfully discharged in violation of the ADA or MHRA. The motion for summary judgment must be denied.

### III. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment [#13] be **DENIED**.


DATED: October 20, 2010         *s/ Franklin L. Noel*
                                FRANKLIN L. NOEL
                                United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **November 4, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **November 4, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court,

and it is, therefore, not appealable to the Circuit Court of Appeals.