**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| LANDON YOUNG, | Civil No. 09-1653 (JRT/FLN) |
| Plaintiff, | |
| v. | **ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| MCLANE MINNESOTA, INC, | |
| Defendant. | |

Stephen C. Fiebiger, **STEPHEN C. FIEBIGER & ASSOCIATES, CHARTERED**, 2500 West County Road, Suite 190, Burnsville, MN 55337, for plaintiff.

Alec J. Beck, **FORD & HARRISON LLP**, 225 South Sixth Street, Suite 3150, Minneapolis, MN 55402; for defendant.

This matter is before the Court on defendant's timely objections to a Report and Recommendation ("R&R") issued by United States Magistrate Judge Franklin L. Noel on October 21, 2010. (Docket No. 29.) The underlying case surrounds the termination of plaintiff Landon Young from his job with defendant McLane Minnesota, Inc. ("McLane"). The R&R recommends denying summary judgment to McLane. (*Id.*) After *de novo* review of those portions of the R&R to which defendant objects, *see* 28 U.S.C. § 636(b)(1)(C), D. Minn. LR 72.2(b), the Court finds that Young has presented sufficient issues of material fact as to whether McLane perceived him to be disabled and terminated him as a result to survive summary judgment. The Court therefore adopts the R&R.

# BACKGROUND

Prior to his termination, Young worked at McLane as a full case grocery selector. (Aff. of Emily L. Ruhsam, Nov. 11, 2009, Ex. A at 11, Docket No. 17.) Young worked the day shift from 6:00 A.M. to 2:30 P.M. After his shift on Monday, September 24, 2007, Young was injured in an off-duty car accident. (*Id.* at 52.) He was taken to the hospital, treated, and released at or around 9:00 P.M. that night. (*Id.* at 61.) Young then called McLane and spoke to the supervisor on duty, though he cannot recall the individual's name. (*Id.* 60–61, 63–64.) Young told the supervisor that he had been in an accident, would be out from work until his next doctor's visit eight days later, and that he would present a doctor's note to McLane after that visit. (*Id.* at 65.) Young alleges the supervisor told him "that was fine." (*Id.* at 64.) Two days later, on September 26, Young also informed the billing office that he would not return until his next doctor's appointment. (*Id.* at 79.) Young's cell phone records indicate that he placed a total of seven calls to McLane on September 24, 26, and 28 (two calls) and on October 2, 3, and 5. (Aff. of Michelle Pufahl, Mar. 31, 2010, Ex. B, Docket No. 16.)

McLane maintains a "no call no show" policy for absences from work. A violation of the policy occurs if an employee fails either to report an absence or to report to work by the end of the employee's shift. (Ruhsam Aff., Ex. 4 of Ex. A, Docket No. 17.) The policy mandates that the first violation results in a "final warning" and the second violation results in "separation" from employment. (*Id.*) The policy does not specify that an employee must call each day of an extended medical absence, only that an employee must supply a "doctor's note confirming treatment and the need for multiple

days off" for medical absences of four or more consecutive days. (*Id.*) The policy does not specify at what time during an extended absence an employee must provide the doctor's note.

On October 3, Young returned to work with a doctor's note that he delivered to McLane Human Resources. (Ruhsam Aff., Ex. A at 91, Docket No. 17.) The note indicated Young's injury was a "compression injury" to the disks of the thoracic spine. (*Id.*, Ex. 9 of Ex. A.) It further authorized Young to work with accommodations from October 3 to October 13 requiring "desk duty with 5 minute breaks every 15 minutes." (*Id.*, Ex. A at 91.) Later that day, Young spoke with Tyrone McGee, his direct supervisor, on the phone and McGee told him he was being let go because "he missed too many days since the accident." (*Id.* at 99.)

McLane asserts that it terminated Young on October 1 for violating the "no call no show" policy on Thursday, September 27 and Friday, September 28. (*See* Pufahl Aff., Ex. C, Docket No. 16.) Young, however, claims he was not actually terminated until October 5, the date McLane signed and completed his termination paperwork. (*See id.*) The termination notice noted Young "had a non work related injury and failed to return to work." (*Id.*) Regardless, between the date of Young's injury and the date he first was told he was being terminated, Young missed approximately seven days of work and placed seven phone calls to McLane. (Pufahl Aff., Ex. B, Docket No. 16.) Further, the first time Young heard he was being terminated was **after** he had presented a doctor's note requesting accommodations. (Ruhsam Aff., Ex. A at 99, Docket No. 17.)

Young initiated the instant litigation claiming violations of the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). Specifically, Young claims that McLane wrongfully terminated him because of his disability and his request for reasonable accommodations. (Compl. ¶ 12.) McLane moved for summary judgment and the Magistrate Judge issued an R&R recommending the Court deny the motion. (Docket No. 29.)

`     McLane objects to the R&R on the grounds that the Magistrate Judge made errors of both law and fact. (Docket No. 30.) McLane asserts errors of law in the consideration of inadmissible hearsay and the failure to analyze if Young met his burden of proof under the *McDonnell Douglas* burden shifting analysis. (*Id.* at 1–2.) It asserts the Magistrate Judge erred in its conclusions of fact regarding whether Young explained his condition on the day of the accident, whether he supplied a doctor's note or called on September 26, and whether the termination date of October 5 on the written notice is inconsistent with the evidence on the record.

## DISCUSSION

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the

light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Furthermore, summary judgment "should seldom be granted in the context of employment actions, as such actions are inherently fact based." *Mayer v. Nextel West Corp.*, 318 F.3d 803, 806 (8th Cir. 2003) (quoting *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999)).

## II. HEARSAY EVIDENCE

McLane asserts that the alleged statement from an unidentified floor supervisor that it "was fine" for Young to be absent until his doctor's appointment is hearsay that does not fall within any exception. As a result, McLane objects that the Magistrate Judge's reliance on this statement in his conclusions is error. McLane asserts that the statement cannot qualify as a statement by an agent in the scope of employment since Young cannot identify with whom he spoke. *Gulbranson v. Duluth, Missabe & Iron Range Ry. Co.*, 921 F.2d 139, 142 (8th Cir. 1990); Fed. R. Evid. 801(d)(2)(D). However, the Magistrate Judge noted that this piece of evidence was but one of many that supported the inference that McLane had authorized Young's leave, including the numerous phone calls documented on Young's cell phone bill. (R&R at 5–6, Docket No. 29.) Given the cell phone records and the operating procedure of McLane to presumably only have employees answer the phone, the Court finds "[t]he logical inference from this fact is sufficient to establish the necessary foundation that the declarant[ was] employed by [McLane] at the time the statements were made." *DCS Sanitation Mgmt., Inc. v. Occupational Safety and Health Review Comm'n*, 82 F.3d 812,

815 (8th Cir. 1996). This conclusion would render the statement admissible as a statement of a party-opponent made in the scope of employment. Fed. R. Evid. 801(d)(2). Furthermore, the statement may also be admissible for its effect on the listener, in that Young presumed from the statement that he had fulfilled his duty under the "no call no show" rule. Fed. R. Evid. 801(c). The Court finds no error in the Magistrate Judge's consideration of this statement.

### III.   *MCDONNELL DOUGLAS* TEST

McLane asserts that the Magistrate Judge made an error of law by not analyzing if Young had met his burden of proof under the *McDonnell Douglas* burden shifting scheme. "Claims of discrimination . . . are analyzed within the framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973). . . . The *McDonnell Douglas* framework consists of a prima facie case, an answer, and a rebuttal." *Cannon v. Minneapolis Police Dept.*, 783 N.W.2d 182, 189 (Minn. Ct. App. 2010) (quotation marks omitted).[1] However, a plaintiff with direct evidence of discrimination need not resort to the *McDonnell Douglas* scheme to survive a motion for summary judgment. As the Eighth Circuit explains:

> [A] plaintiff may survive the defendant's motion for summary judgment in one of two ways. The first is by proof of "direct evidence" of discrimination. Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume. Rather, direct evidence

---

[1] Minnesota courts analyze claims under the MHRA utilizing the same standards as those for claims under the ADA. "[B]ecause the purposes of the MHRA and ADA are similar, caselaw under the ADA may be used to interpret the MHRA." *Manska v. Fabian*, A08-0025, 2008 WL 5215954, at *3 (Minn. Ct. App. Dec. 16, 2008) (citing *Kolton v. Cnty. of Anoka*, 645 N.W.2d 403, 408, 410 (Minn. 2002)).

>   is **evidence showing a specific link between the alleged discriminatory animus and the challenged decision**, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.  Thus, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial.

*Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (emphasis added) (quotation marks and citations omitted).

Here Young's termination notice mentions his injury.  "[R]emarks of the employer that reflect a discriminatory attitude are often sufficiently strong evidence to avoid the *McDonnell Douglas* framework completely . . . . The touchstone inquiry remains whether circumstances permit a reasonable inference of discrimination." *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1040 (8th Cir. 2010) (quotation marks omitted).  The notice also mentions that he "failed to return to work," however, the record is replete with evidence that Young was in constant contact with McLane by phone and that he talked with more than one person about his injury.  This evidence shows a direct link between Young's termination and his injury sufficient to survive summary judgment without having to resort to the *McDonnell Douglas* burden shifting scheme.

Regardless, McLane's objections fail even if the summary judgment motion is evaluated under the *McDonnell Douglas* burden shifting analysis.  Under *McDonnell Douglas*, Young first must establish a prima facie case of discrimination. *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005).  After Young demonstrates he was qualified for his job, regarded as disabled, and terminated, McLane must proffer a

legitimate, nondiscriminatory reason for the adverse employment action. *Id.* McLane puts forth a violation of the "no call no show" policy, thus shifting to Young the burden of demonstrating that the proffered reason is merely a pretext for discrimination. *Id.*

McLane objects that Young has not met his burden to show pretext. Young may demonstrate pretext in either of two ways. *Wallace v. DTG Operations, Inc.,* 442 F.3d 1112, 1120 (8th Cir. 2006). First, he may prove pretext "by showing that [McLane's] proffered explanation is unworthy of credence.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Under this method, Young must rebut McLane's "underlying factual claims" by showing the reason has no factual basis. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006). Alternatively, Young may prove pretext by persuading the Court that a "[prohibited] reason more likely motivated [McLane]." *Id.* (quoting *Burdine*, 450 U.S. at 256). Under the second method, Young must rebut "[McLane's] ultimate factual claim regarding the absence of retaliatory intent." *Id*. Young must demonstrate "that sufficient evidence of intentional retaliation exists for a jury to believe [his] allegations and find that the proffered explanation was not the true motivating explanation." *Id.* At the summary judgment stage, where all facts must be viewed in a light favorable to the non-movant, Young must simply present enough evidence "to permit a reasonable inference of discriminatory animus." *Haigh v. Gelita USA, Inc.*, Nos. 09-3479, 10-1647, 2011 WL 260303, at *5 (8th Cir. Jan. 28, 2011).

Young presents evidence of pretext in several respects. First, Young points to evidence of a change in explanation for his termination. *See Stallings*, 447 F.3d at 1052

(noting that pretext can be shown when an employer changed its explanation for why it fired the employee). Young spoke with his supervisor on October 3 who explained that Young was being terminated because he "missed too many days since the accident." (Ruhsam Aff., Ex. A at 99, Docket No. 17.) Subsequently, the termination notice states the reason for discharge was "**non work related injury** and missed days." (Pufahl Aff., Ex. C, Docket No. 16 (emphasis added).) This additional language on the termination notice is sufficient for a jury to infer a discriminatory animus motivated the termination decision.

Second, Young proffers evidence that he did not actually violate either the "no call no show" policy or the medical note requirement. *See Stallings*, 447 F.3d at 1052 (noting pretext can be shown where the employee demonstrates that the employer's proffered reason has no basis in fact). Young called McLane seven times between September 24 and October 3 and he believed his absences were approved when the supervisor said "that was fine." (Pufahl Aff., Ex. B, Docket No. 16; Ruhsam Aff., Ex. A at 11, Docket No. 17); *cf. Springer v. McLane Co., Inc.*, 692 F. Supp. 2d 1050, 1057–58 n.9 (D. Minn. 2010) (granting summary judgment to employer when employee presented **no** evidence supporting her belief that her absences were excused under the company's absence policies). Further, Young never received a warning between September 24 and October 3 that he had violated the "no call no show" policy, despite the policy's warning procedure. (Ruhsam Aff., Ex. 4 of Ex. A, Docket No. 17.) As to the medical note, Young explained during the September 24 phone call that he would supply a "doctor's note" on October 3, and then did so. (*Id.*) The medical policy does not state that an employee must present a

medical note immediately. (*Id.*) Evidence that an employer has deviated from company policy is a legitimate way to show pretext. *Stallings*, 447 F.3d at 1052.

Additionally, McLane intimates that the company was unaware of Young's potential disability and that the reason for his termination was for violations of the "no call no show" policy on September 27 and September 28. (*See, e.g.*, Def.'s Mem. in Supp. at 5, Docket No. 31 ("[T]he issue is if Young ever explained his condition as to put McLane on notice of any potential disability.").) Yet, in its Position Statement to the Equal Employment Opportunity Commission ("EEOC"), McLane acknowledged that "Young called his supervisor, Tyrone McGee, [and] said he had been in an automobile accident . . . . McGee explained . . . [Young] did not qualify for family medical leave." (Aff. of Stephen C. Fiebiger, Apr. 29, 2010, Ex. 22 at 2, Docket No. 20.) A jury could infer from the fact that McGee and Young discussed medical leave, that Young had disclosed his injury.

These facts are sufficient to "permit a reasonable inference of discriminatory animus." *Haigh*, 2011 WL 260303, at *5. Because the Court's "function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," summary judgment is unwarranted. *Anderson*, 477 U.S. at 249. Therefore, the Court finds that even under the burden shifting analysis of *McDonnell Douglas*, Young has presented enough evidence of pretext to survive summary judgment.

## IV.   FACTUAL OBJECTIONS

McLane objects to three "factual conclusions" in the R&R: that Young explained his condition to someone at McLane, that McLane received a doctor's note for Young's absences between September 26 and 30, and that there was evidence of inconsistencies in McLane's asserted termination date.  As an initial matter, the Court notes that in considering a motion for summary judgment the Court does not make conclusions about what the facts of a case **are**, rather the Court, evaluating the evidence in a light most favorable to the non-movant, must determine if there exist **disputes** regarding material facts.  Only "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, . . . should [a court] not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

As to the first factual issue, Young states that he called and explained his condition.  His phone records show that he did in fact call and McLane's EEOC statement indicates that he discussed medical leave with his supervisor.  A jury could reasonably believe that these facts support the conclusion that Young explained his condition.  At this stage of the case, the Magistrate Judge correctly interpreted that fact in Young's favor.

As to the second factual issue, Young claims he either presented a note or called McLane regarding his absence on September 26.  The record is replete with evidence that Young was under a doctor's care during the time frame at issue (Young Exs. AA–HH, Docket No. 21), and that he called McLane repeatedly.  Young testified that he received

approval for the absence.  As a result, the Magistrate Judge correctly interpreted this fact in Young's favor.

As to the third factual issue, Young's termination notice has a date of October 5, yet McGee told him that he was terminated on October 3.  McLane's EEOC Statement declares that Young was terminated on October 1.  These dates are different.  The R&R notes the discrepancy in the dates and correctly finds that this discrepancy could be viewed by a jury as evidence of a change in the explanation for the termination sufficient to demonstrate pretext.  *See Stallings*, 447 F.3d at 1052 (noting that evidence of pretext can include when the employer changed its explanation regarding an employee's termination).  In sum, the Court finds that the Magistrate Judge correctly viewed the facts in a light favorable to Young, the non-movant, and in a manner sufficiently supported by the record.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** defendant McLane's objections [Docket No. 30] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated October 20, 2010 [Docket No. 29].  Accordingly, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 13] is **DENIED.**

DATED:  March 29, 2011　　　　　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge